# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ISRAEL ROBLES-FIGUEROA,

                  Petitioner,

v.

BRIAN FOSTER,

                  Respondent.

Case No. 14-CV-1424-JPS

# ORDER

      The petitioner, Israel Robles-Figueroa, is currently serving a sentence of 30 years' confinement as a result of his conviction on charges of first degree reckless homicide and child abuse. (*See, e.g.*, Docket #9, Ex. 1 at 1). On November 12, 2014, he filed a petition for a writ of habeas corpus. (Docket #1). The Court screened that petition, pursuant to Rule 4 of the Rules Governing § 2254 cases, and allowed Mr. Robles-Figueroa to proceed on four claims. (Docket #5). Thereafter, the respondent, Brian Foster, who is represented by the State of Wisconsin (and, for that reason, the Court will hereinafter refer to the respondent as "the State") answered Mr. Robles-Figueroa's petition and filed the extensive record. (Docket #9, #10). Mr. Robles-Figueroa then filed a brief in support of his petition (Docket #13); the State responded (Docket #16); and Mr. Robles-Figueroa filed a reply (Docket #17).

      The matter is, thus, fully briefed and before the Court for a decision. The Court begins by addressing Mr. Robles-Figueroa's petition with a summary of the factual and procedural background in this case before turning to the merits of Mr. Robles-Figueroa's petition. In the end, the Court is obliged to deny Mr. Robles-Figueroa's petition.

1.    BACKGROUND

Mr. Robles-Figueroa was charged and convicted in Outagamie Circuit Court with first degree reckless homicide and child abuse following the death of his stepson. (*See* Docket #9, Ex. 1). The procedural background is confusing, so the Court will discuss each phase separately, beginning with Mr. Robles-Figueroa's conduct leading to the charges against him, then discussing his two separate jury trials and sentencings, and closing with his direct appeals and other post-conviction motions.

1.1    Pre-Charge Factual Background

Paramedics reported to Mr. Robles-Figueroa's residence on November 29, 2002, where they found Mr. Robles-Figueroa's two-and-a-half-year-old stepson was not breathing. (*See, e.g.*, Docket #9, Ex. 2 at 5; Docket #10, Exs. 1–5). The paramedics rushed the stepson to the hospital, where he later died of multiple blunt force injuries to the head and abdomen. (*See, e.g.*, Docket #9, Ex. 2 at 5; Docket #10, Exs. 1–5).

Mr. Robles-Figueroa provided law enforcement with at least three separate versions of the events leading up to his stepson's death. (Docket #9, Ex. 2 at 5). Mr. Robles-Figueroa first claimed that his stepson had fallen in the shower. (Docket #9, Ex. 2 at 5). He next claimed that his stepson could have sustained the injuries while the two were wrestling and that, at one point, he fell on top of his stepson with his arms out to brace himself, causing the fatal injury. (Docket #9, Ex. 2 at 5). Finally, Mr. Robles-Figueroa claimed that he may have injured his stepson trying to get his stepson to breathe again. (Docket #9, Ex. 2 at 5).

Law enforcement did not believe any of these versions of events and so, on December 2, 2002, charged Mr. Robles-Figueroa with first degree reckless homicide and child abuse. (Docket #9, Ex. 2 at 5).

1.2     Mr. Robles-Figueroa's First Trial

Judge Joseph Troy presided over Mr. Robles-Figueroa's original pretrial and trial proceedings. (*See, e.g.*, Docket #9, Exs. 11–13). Judge Troy handled various pretrial motions, resolving some in favor of Mr. Robles-Figueroa. (*See, e.g.*, Docket #9, Ex. 2 at 6; Docket #9, Exs. 11–13). And, after Mr. Robles-Figueroa opted to take his case to trial, Judge Troy empaneled a jury to hear the case. (Docket #9, Ex. 2 at 6).

On April 3, 2003, that jury convicted Mr. Robles-Figueroa on both counts, and approximately two months later Judge Troy sentenced Mr. Robles-Figueroa to 25 years of initial confinement and 20 years of extended supervision. (*See* Docket #9, Ex. 2 at 6).

1.3     Mr. Robles-Figueroa Receives a New Trial

On May 20, 2005, Judge Troy granted Mr. Robles-Figueroa's motion for a new trial, based upon a juror's racist comments in the first trial. (*See* Docket #9, Ex. 2 at 6). In doing so, Judge Troy cited a juror's failure "to admit in voir dire that she had deeply held and vile prejudices against people of the Defendant's ethnic heritage and that she expressed those feelings during deliberations." (Docket #9, Ex. 3 at 2). However, the Court must note that there is no indication that Judge Troy, himself, erred in any way in the first trial and the matter never reached the Wisconsin Court of Appeals; Judge Troy corrected the problem on his own.

### 1.4    Mr. Robles-Figueroa's Second Trial

Judge Troy did not participate in that new trial; instead, Judge Dee Dyer presided over the pretrial and trial proceedings in Mr. Robles-Figueroa's second case. (*See* Docket #9, Ex. 2 at 6; Docket #10, Exs. 1–5).

Judge Dyer empaneled a jury which, on March 3, 2008, found Mr. Robles-Figueroa guilty of the same two charges against him: first degree reckless homicide and child abuse. (*See* Docket #9, Ex. 2 at 6; Docket #10, Ex. 5 at 104:2–109:9).

On July 18, 2008, Judge Dyer sentenced Mr. Robles-Figueroa to a longer term than Judge Troy had: 30 years of initial confinement and 20 years of extended supervision. (*See* Docket #9, Ex. 1; Docket #9, Ex. 2 at 6). In other words, Judge Dyer sentenced Mr. Robles-Figueroa to 5 more years of confinement than Mr. Robles-Figueroa had received from Judge Troy. (*See* Docket #9, Ex. 1; Docket #9, Ex. 2 at 6). Judge Dyer provided multiple reasons for this sentence: Mr. Robles-Figueroa's refusal to take responsibility for his actions; the risk that Mr. Robles-Figueroa poses to society; and Mr. Robles-Figueroa's continued obstruction during the second trial. (Docket #9, Ex. 15, at 79:3–86:23). In the part of the sentencing that is, perhaps, most relevant to Judge Dyer's imposition of an increased term, Judge Dyer stated:

> I find that due to your continual obstruction of the investigation by your falsehoods to the police officers in this case, Mr. Robles-Figueroa, and then your taking the witness stand and continuing those falsehoods in front of the jury that an additional amount of time to what Judge Troy considered an appropriate sentence is a must. You need some additional time to think about all of your actions this case.

(Docket #9, Ex. 15, at 85:6–15). In other words, it was Mr. Robles-Figueroa's perjury in the second trial that led to his increased sentence.

1.5    Mr. Robles-Figueroa's Post-Conviction Motions

Following sentencing, Mr. Robles-Figueroa moved for post-conviction relief on several grounds, three of which are relevant to this case and none of which were successful. (*See generally* Docket #9, Ex. 17). First, he argued that Judge Dyer's increased sentence was unconstitutionally vindictive. (Docket #9, Ex. 17 at 2:14–20, 6:4–7:8). Second, he argued that a leg restraint that he had worn during the second trial deprived him of a fair trial. (Docket #9, Ex. 17 at 7:9–10:1). Third, he argued that his attorney in the second trial was ineffective in failing to challenge the leg restraint. (*See* Docket #9, Ex. 17 at 7:9–10:1). In a January 14, 2010 hearing, Judge Dyer rejected each of those arguments.

In rejecting Mr. Robles-Figueroa's argument that the sentence was unconstitutionally vindictive, Judge Dyer confirmed that he had imposed a higher sentence on the basis of Mr. Robles-Figueroa's perjury in his second trial. (Docket #9, Ex. 17 at 6:4–7:8). Judge Dyer stated, in relevant part:

> On the issue of unconstitutionality of sentence imposed by this Court following the second trial, there is nothing unconstitutional about sentencing a defendant to a greater sentence where the new factor is that the defendant took the witness stand and perjured himself in the second trial. This Court made it clear at Mr. Robles-Figueroa's second sentencing that the perpetration of his falsehoods onto the witness stand under oath in his second trial was the reason that he needed additional time in prison.
>
> …
>
> This defendant got on the witness stand in this courtroom and told the jury under oath a story filled with lies. It is a story that was completely implausible based on the scientific evidence presented by the State and all other evidence that showed the defendant's guilt beyond a reasonable doubt. When a defendant takes the witness stand under oath and does not live

up to that oath to tell the truth, that fact may be taken into account in imposing a subsequent sentence upon the defendant.

…

This Court made it clear at the time of this defendant's second sentencing and again makes it clear today that perjury to the jury is the reason further prison time was imposed in this case.

(Docket #9, Ex. 17, at 6:4–7:8).

Judge Dyer also rejected Mr. Robles-Figueroa's leg-restraint arguments, finding that the jury was unaware of Mr. Robles-Figueroa's leg restraint. Judge Dyer conducted an evidentiary hearing, taking detailed testimony from Mr. Robles-Figueroa's attorney, corrections personnel, and even Mr. Robles-Figueroa himself. (Docket #9, Ex. 17 at 7:9–10:1). None of that testimony suggested that Mr. Robles-Figueroa was subjected to any prejudice by the presence of the restraint; in relevant part, Judge Dyer stated:

This Court finds that in this case there is no evidence in this record that indicates that any juror saw the defendant's shackle, saw the leg brace either while the defendant was seated at the table or when the defendant approached or was on the witness stand. This Court observed the defendant throughout his trial and the Court finds that the leg brace did not stick out from his clothing.

This Court further finds that the defendant's leg brace was not able to be seen by the jurors in any conspicuous way. The defendant's legs were covered from above by the defense table, and the defendant had two attorneys and an investigator and an interpreter all seated around him so that he never was directly before the jury while seated at his table.

The defense table in this courtroom is the furthest from the jury box. The jurors would have had great difficulty seeing the defendant's legs. In addition, throughout trial it was never evident that his leg was in any locked position under his table.

The testimony from the court officers who placed his leg brace on the defendant was that he was taught and understood how to release the brace so he could bend his knee; and this Court never observed the leg in a locked, straight position during this trial.

Furthermore, I find that this leg brace did not affect his gait to the witness stand. The defendant – – The Court did not observe this defendant to limp, any limp on his part. There was no stiffness that this Court noticed when he approached the witness stand or when he retreated from the witness stand.

On the issue of the defendant's discomfort, defendant's testimony alone demonstrates that his discomfort was minimal at best and did not affect his ability to assist his defense at trial. Defendant's trial counsel testified and their testimony certainly confirms that this issue of his discomfort was never raised by the defendant in any significant manner to indicate that it affected his ability to assist them in their case or that something should be done about it or defense counsel would have alerted the Court to that fact.

All the court officers that testified in this case, having contact with the defendant, testified that the defendant never mentioned discomfort to them, that he was having any pain from the leg brace.

(Docket #9, Ex. 17 at 7:22–9:22). On this basis, Judge Dyer found that Mr. Robles-Figueroa did not suffer any prejudice from his leg restraint. (Docket #9, Ex. 17 at 7:22–10:1). Accordingly, Judge Dyer rejected Mr. Robles-Figueroa's substantive leg-restraint challenge together with his related ineffective assistance argument. (*See* Docket #9, Ex. 17 at 7:22–10:1).

1.6    Mr. Robles-Figueroa's Direct Appeal

After Judge Dyer denied Mr. Robles-Figueroa's post-conviction motions, Mr. Robles-Figueroa filed a direct appeal, raising the same three arguments addressed above: (1) that Judge Dyer imposed an

unconstitutionally vindictive sentence; (2) that the leg restraint deprived him of a fair trial; and (3) that his trial counsel was ineffective in failing to challenge the leg restraint. (*See, e.g.*, Docket #9, Ex. 2).

The Wisconsin Court of Appeals rejected each of those arguments. (*See* Docket #1, Ex. 1). With regard to the vindictive sentencing argument, the Wisconsin Court of Appeals held that, even if it were to presume that Judge Dyer acted vindictively in imposing a harsher sentence, Judge Dyer "made a sufficient record to overcome the presumption." (Docket #1, Ex. 1 at 3). Specifically, the Wisconsin Court of Appeals stated that Judge Dyer "explained at sentencing and at the postconviction motion hearing that it imposed a harsher sentence because Robles-Figueroa perjured himself at the second trial. … [That reason] was sufficient to justify the increased sentence." (Docket #1, Ex. 1 at 3). With regard to the leg-restraint arguments, the Wisconsin Court of Appeals credited Judge Dyer's factual findings that the jury could not have seen the leg restraint. (Docket #1, Ex. 1 at 4). The Wisconsin Court of Appeals found "nothing in the record to suggest that the circuit court's findings of fact were clearly erroneous." (Docket #1, Ex. 1 at 4). And, based on those facts, the Wisconsin Court of Appeals agreed with Judge Dyer's rejecting of Mr. Robles-Figueroa's leg-restraint arguments.

Mr. Robles-Figueroa sought review by the Wisconsin Supreme Court, presenting only the vindictive sentence claim (Docket #9, Ex. 5); the Wisconsin Supreme Court denied Mr. Robles-Figueroa's request for review (Docket #1, Ex. 3 at 9).

### 1.7 Mr. Robles-Figueroa's Additional Post-Conviction Motion, Appeal, and State Habeas Corpus Petition

After the Wisconsin Supreme Court declined to review Mr. Robles-Figueroa's direct appeal, Mr. Robles-Figueroa filed a new motion for post-

conviction relief. (*See* Docket #9, Exs. 6–9; Docket #1, Ex. 3 at 3–7). Mr. Robles-Figueroa raised a single argument in that new motion that is important in this case: he argued that his trial counsel was ineffective in failing to seek to suppress certain statements Mr. Robles-Figueroa made to law enforcement (and, relatedly, that his appellate counsel was ineffective for failing to raise this argument on direct appeal). Judge Dyer denied Mr. Robles-Figueroa's new motion as procedurally barred as a successive post-conviction motion, and the Wisconsin Court of Appeals affirmed, after considering the merits of the suppression argument. (Docket #1, Ex. 3 at 4–7).

Again, Mr. Robles-Figueroa requested review by the Wisconsin Supreme Court, which declined his request. (Docket #1, Ex. 3 at 9).

Finally, Mr. Robles-Figueroa filed a state petition for a writ of habeas corpus in the Wisconsin Supreme Court, claiming that appellate counsel had been ineffective for not including the leg restraint claim in Mr. Robles-Figueroa's direct appeal petition for review. (*See generally* Docket #9, Ex. 10). The Wisconsin Supreme Court denied Mr. Robles-Figueroa's state habeas petition *ex parte. State v. Robles-Figueroa*, 2014 WI 122, 855 N.W.2d 695.

### 1.8 Mr. Robles-Figueroa's Federal Habeas Petition and the Claims Now Before the Court

On November 12, 2014, Mr. Robles-Figueroa filed the federal habeas petition now before the Court. (Docket #1). The Court screened Mr. Robles-Figueroa's petition pursuant to Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts and allowed Mr. Robles-Figueroa's petition to proceed. (Docket #5).

It appears that Mr. Robles-Figueroa raises three separate groups of claims. The first group relates to Judge Dyer's increased sentence, which Mr. Robles-Figueroa alleges was unconstitutionally vindictive. (*See generally*

Docket #13, #17). The second group relates to the leg restraint that Mr. Robles-Figueroa wore in his second trial; Mr. Robles-Figueroa argues that his due process rights were violated by the leg restraint and that his trial counsel and appellate counsel were ineffective for failing to more fully assert this argument. (*See generally* Docket #13, #17). The third group relates to Mr. Robles-Figueroa's statements to police following his arrest; he asserts that his trial, appellate, and post-conviction counsel were all ineffective in failing to seek suppression of those statements. (*See generally* Docket #13, #17). After setting forth the relevant standards of review, the Court will address each of those groups of claims in turn.

2.     STANDARD OF REVIEW

For those claims which the state courts addressed on their merits, the Court may grant a writ of habeas corpus only if the state court's decision was: (1) "contrary to…clearly established federal law, as determined by the Supreme Court of the United States"; (2) "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States"; or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(l-2). *See also Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015).

"A state court decision is contrary to clearly established federal law if the court applies a rule that plainly contradicts the Supreme Court's governing rule or if it comes to a result different than did the Supreme Court on substantially identical facts." *Avila v. Richardson*, 751 F.3d 534, 536 (7th Cir. 2014) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). *See also Caffey*, 802 F.3d at 894 (citing *Greene v. Fisher*, --- U.S. ----, 132 S.Ct. 38, 44 (2011); *Williams*

*v. Taylore*, 529 U.S. 362, 412 (2000)); *Kamlager v. Pollard*, 715 F.3d 1010, 1016 (7th Cir. 2013) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Williams*, 529 U.S. at 405-06; *McNary v. Lemke*, 708 F.3d 905, 913 (7th Cir. 2013)).

"A decision involves an 'unreasonable application' of Supreme Court precedent if the decision, while identifying the correct governing rule of law, applies it unreasonably to the facts of the case." *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013) (citing *Williams*, 529 U.S. at 407). However, the Supreme Court has made clear that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410. "Mere error is not enough to overcome AEDPA deference; instead, the state court's decision must be objectively unreasonable, meaning it is 'beyond any possibility for fairminded disagreement.'" *Caffey*, 802 F.3d at 894 (quoting *Mosley v. Atchison*, 689 F.3d 838, 844 (7th Cir. 2012); citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Etherly v. Davis*, 619 F.3d 654, 660 (7th Cir. 2010)).

"A decision 'involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence.'" *Bailey v. Lemke*, 735 F.3d 945, 949–50 (7th Cir. 2013) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010); citing *Ward v. Sternes*, 334 F.3d 696 (7th Cir. 2003)).

3.     ANALYSIS

Having set forth the applicable standard of review, the Court will now review each of Mr. Robles-Figueroa's claims. The Court will begin by addressing Mr. Robles-Figueroa's sentence-related claim. Next, the Court will address Mr. Robles-Figueroa's leg-restraint-related claims. Finally, the

Court will address Mr. Robles-Figueroa's evidence-suppression-related claims.

### 3.1    Sentence-Related Claim

Mr. Robles-Figueroa argues that the sentence Judge Dyer imposed after the second trial was unconstitutionally vindictive. The Wisconsin Court of Appeals' decision on this issue, which was the last reasoned decision and therefore this Court's point of reference on habeas review, *Hittson v. Chatman*, --- U.S. ----, 135 S. Ct. 2126, 2127, *reh'g denied*, 136 S. Ct. 15 (2015) (citing *Ylst v. Nunnemaker*, 501 U.S. 797 (1991)), identified the controlling Supreme Court precedent and held that Judge Dyer's rationale for the harsher sentence was sufficient (Docket #1, Ex. 1 at 2–4). That analysis was not contrary to federal law and did not involve an unreasonable application thereof or an unreasonable determination of the facts; however, even if the Court were to review this claim *de novo*, it would find that Mr. Robles-Figueroa is not entitled to relief.

To be sure, as the Wisconsin Court of Appeals acknowledged (Docket #1, Ex. 1 at 2–3 (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969); *United States v. Goodwin*, 457 U.S. 368, 374 (1982)), *if* vindictiveness motivated Judge Dyer to impose a longer sentence, then that sentence would be unconstitutional; but Judge Dyer remained free to impose a longer sentence following the second trial, so long as that sentence was not motivated by actual vindictiveness, *see Wasman v. United States*, 468 U.S. 559, 568 (1984). In *Pearce*, the Supreme Court set forth constraints on the power of a sentencing authority to increase the length of sentences following reconviction. *Pearce*, 395 U.S. 711. The Supreme Court held that:

Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear.

*Id.*, at 725–726.

To protect defendants against vindictive sentences, the Supreme Court has held that a presumption of vindictiveness applies when the sentencing court fails to provide its justification for the increased sentence. *See, e.g.*, *Alabama v. Smith*, 490 U.S. 794, 798 (1989).

Of course, that presumption can be rebutted and there are two applicable bases for rebuttal, here: (1) the fact that a different judge handled the second trial and sentencing; and (2) the fact that Judge Troy, himself, ordered a new trial after the jury issues in the first. *See, e.g.*, *Colten v. Kentucky*, 407 U.S. 104 (1972) (finding sentence not vindictive where separate judge handled second trial and sentencing); *Texas v. McCullough*, 475 U.S. 134 (1986) (finding sentence not vindictive where trial judge, himself, granted a new trial). In *Colten*, the Supreme Court recognized that when a second judge conducts a new trial, "[t]he possibility of vindictiveness, found to exist in *Pearce*, is not inherent." *Colten*, 407 U.S. at 116. Likewise, in *McCullough*, the Supreme Court concluded that, where a judge, him- or herself, grants a new trial, the presumption of vindictiveness does not apply. 475 U.S. at 138–39.

In that case, the trial court judge granted the defendant a new trial on the basis of prosecutorial misconduct, held a second trial, and imposed a harsher sentence following the defendant's conviction in the second trial. *Id.* at 136. The Supreme Court rejected the defendant's argument on appeal that the sentence was vindictive, stating:

> Granting McCullough's motion for a new trial hardly suggests any vindictiveness on the part of the judge towards him. "[U]nlike the judge who has been reversed," the trial judge here had "no motivation to engage in self-vindication." *Chaffin v. Stynchcombe*, 412 U.S. [17,] 27 [(1973)]. In such circumstances, there is also no justifiable concern about "institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals." *Ibid.* In granting McCullough's new trial motion, Judge Harney went on record as agreeing that his "claims" had merit. Presuming vindictiveness on this basis alone would be tantamount to presuming that a judge will be vindictive towards a defendant merely because he seeks an acquittal.

*McCullough*, 475 U.S. at 138–39. On either basis—the fact that Judge Dyer had no involvement in the first case or the fact that Judge Troy, himself, granted Mr. Robles-Figueroa's motion for a new trial—the presumption would be inapplicable.

However, even if the presumption *were* to apply, Judge Dyer's statements at sentencing would clearly be enough to overcome that presumption, as the Wisconsin Court of Appeals held. At Mr. Robles-Figueroa's sentencing following his second trial, Judge Dyer provided a lengthy, logical, and non-vindictive justification for the length of the sentence. (Docket #9, Ex. 15 at 79:3–86:23). The Wisconsin Court of Appeals, having already identified the correct and controlling Supreme Court precedents (Docket #1, Ex. 1 at 2–3 (citing *Pearce*, 395 U.S. 711; *Goodwin*, 457

U.S. 368)), found Judge Dyer's justification sufficient:

> We conclude that, assuming the presumption applies, the circuit court made a sufficient record to overcome the presumption. The court explained at sentencing and at the postconviction motion hearing that it imposed a harsher sentence because Robles-Figueroa perjured himself at the second trial. The court's reason was based on the conduct of the defendant after the first trial, and was sufficient to justify the increased sentence. Robles-Figueroa has not established that the court violated his due process rights by imposing a harsher sentence.[1]

(Docket #1, Ex. 1 at 3–4). That is not contrary to federal law or an unreasonable application thereof. *See, e.g.*, *Wasman*, 468 U.S. at 572 (harsher sentence is permissible, and *Pearce* presumption overcome, when "a sentencing authority…justif[ies the] increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings.") (citing *Pearce*, 395 U.S. at 726); *Alabama v. Smith*, 490 U.S. 794, 801 (1989) ("The defendant's conduct during trial may give the judge insights into his moral character and suitability for rehabilitation."); *United States v. Grayson*, 438 U.S. 41, 53 (1978) (sentencing

---

[1]This last sentence could be viewed as incorrect. If the *Pearce* presumption were to apply, then Mr. Robles-Figueroa would not bear the burden of establishing that Judge Dyer's sentence was vindictive. *See Alabama v. Smith*, 490 U.S. 794, 799 (1989) (internal citations omitted). The remainder of the paragraph, without placing the burden on Mr. Robles-Figueroa, understandably concludes that Judge Dyer made a sufficient record to overcome the presumption, leading this Court to believe that the misstatement played no role in the Wisconsin Court of Appeals' analysis. Moreover, as the Court already noted, even if it were to review this claim *de novo*, it would not reach a different conclusion. That is because the Wisconsin Court of Appeals was assuming *arguendo* that the *Pearce* presumption applied. It is clear that the *Pearce* presumption does not, in fact, apply in this case, *see, e.g.*, *Colten*, 407 U.S. 104; *McCullough*, 475 U.S. 134, making the Wisconsin Court of Appeals' errant sentence harmless.

authority's perception of the truthfulness of defendant testifying on his own behalf may be considered in sentencing). Nor did the Wisconsin Court of Appeals unreasonably determine the facts. Instead, the Wisconsin Court of Appeals' decision is consistent with the law and the record.

For these reasons, the Court is obliged to deny Mr. Robles-Figueroa's habeas petition insofar as that petition relies upon Mr. Robles-Figueroa's vindictive-sentence claims.

### 3.2    Leg-Restraint-Related Claims

Mr. Figueroa argues that the leg restraint he wore at trial deprived him of a fair trial and that his trial and appellate attorneys were ineffective for failing to challenge the use of the leg restraint and to present the leg-restraint claims on appeal, respectively.

Mr. Robles-Figueroa failed to exhaust both the underlying substantive claim—that the leg restraint deprived him of a fair trial—and the related ineffective assistance of trial counsel claim. "To fairly present his federal claim, a petitioner must assert that claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014) (citing *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). Mr. Robles-Figueroa did not present either the substantive claim or the trial counsel claim to the Wisconsin Supreme Court for review. (Docket #9, Ex. 5). Nonetheless, the Court could review these claims if Mr. Robles-Figueroa established "cause for and prejudice from [his failure to raise them] or can demonstrate that the district court's failure to consider the claim[s] would result in a fundamental miscarriage of justice." *Richardson*, 745 F.3d at 272 (citing *Bolton v. Akpore*,

730 F.3d 685, 696 (7th Cir. 2013)). And "[m]eritorious claims of ineffective assistance can excuse a procedural default," *Richardson*, 745 F.3d at 272 (citing *Brown v. Watters*, 599 F.3d 602, 609 (7th Cir. 2010); *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)), so Mr. Robles-Figueroa argues (and appears to have preserved his claim, *see Gray*, 598 F.3d 324, 330 (7th Cir. 2010)) that appellate counsel was ineffective in failing to present the leg-restraint claims to the Wisconsin Supreme Court.

In light of this backdrop, the Court can collapse its entire inquiry on the leg-restraint claims into a single question: whether Mr. Robles-Figueroa suffered any prejudice from wearing the leg restraint. Each inquiry can boil down to prejudice. Because Mr. Robles-Figueroa did not exhaust his substantive leg-restraint claim and related ineffective assistance of trial counsel claim, he cannot proceed on either absent a showing of prejudice (assuming *arguendo* that he has established cause; meanwhile, a fundamental miscarriage of justice would not be present unless "no reasonable trier of fact would have found him guilty but for the error allegedly committed by the state court," which clearly implies a prejudice requirement). *Bolton*, 730 F.3d at 696–97 (internal citations omitted). Likewise, to the extent that the Court were to review either of Mr. Robles-Figueroa's leg-restraint-related ineffective-assistance claims, it could not grant him relief without finding prejudice. *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Even if the Court were to review Mr. Robles-Figueroa's leg-restraint claims *de novo*, it would reach the same result as the Wisconsin Court of Appeals: because the leg restraint was not visible to the jury, it did not impact Mr. Robles-Figueroa's right to a fair trial and, thus, he was not prejudiced by counsel's failure to raise the issue either at trial or before the

Wisconsin Supreme Court. Judge Dyer held an extensive evidentiary hearing to address the leg restraint claim, and issued detailed factual findings to establish that Mr. Robles-Figueroa's leg restraint was not visible to the jury. (*See, e.g.*, Docket #9, Exs. 16, 17). The Wisconsin Court of Appeals accepted those facts, and this Court cannot find any fault in them. And, without the leg restraint being visible to the jury, there is no remaining concern. *See, e.g.*, *Stephenson v. Wilson*, 629 F.3d 732, 732–33 (7th Cir. 2011) (collecting restraint-related cases, all of which are concerned with the use of visible restraints); *United States v. Garcia*, 754 F.3d 460, 477 (7th Cir. 2014) ("*Williams* and *Harrell* deal with a continuing, outward sign to the jury that might undermine the presumption of innocence.") (citing *Harrell v. Israel*, 672 F.3d 632, 635 (7th Cir. 1982); *Illinois v. Allen*, 397 U.S. 337, 344 (1970)). *Accord Deck v. Missouri*, 544 U.S. 622, 630 (2005); *United States v. Jackson*, 419 F. App'x 666, 670 (7th Cir. 2011); *Stephenson v. Wilson*, 619 F.3d 664, 668 (7th Cir. 2010); *Wrinkles v. Buss*, 537 F.3d 804, 823 (7th Cir. 2008).[2]

In sum, whether reviewed under AEDPA's deferential standards or *de novo*, and assuming that the Court could even reach the issue, Mr. Robles-Figueroa's leg-restraint-related claims fail. As such, the Court is obliged to deny Mr. Robles-Figueroa's petition to the extent that it relies upon those claims.

---

[2] To the extent that Mr. Robles-Figueroa may be complaining that prejudice resulted from some other concern, unrelated to the visibility of the leg restraint, *see Deck*, 544 U.S. at 631; *Jackson*, 419 F. App'x at 670, Judge Dyer's factual findings addressed that contention, as well, stating that Mr. Robles-Figueroa's "discomfort was minimal at best and did not affect his ability to assist his defense at trial" (Docket #9, Ex. 17 at 9:6–17).

### 3.3 Evidence-Suppression-Related Claims

Mr. Robles-Figueroa's remaining claims all relate to a contention that he made in his final post-conviction motion: that his trial counsel was ineffective for failing to move for suppression of the inconsistent statements he made to police, and likewise that his post-conviction counsel[3] was ineffective for failing to raise the issue in Mr. Robles-Figueroa's original post-conviction motion. (*See* Docket #1, Ex. 3). As the Wisconsin Court of Appeals pointed out in its review of these claims, Mr. Robles-Figueroa based these claims on *Missouri v. Seibert*, 542 U.S. 600 (2004). (Docket #1, Ex. 3 at 5). In *Seibert*, the Supreme Court expressed concern over the practice of two-stage custodial interrogations, in which the police engaged in an initial interrogation before reading the suspect his or her *Miranda* rights. *See Seibert*, 542 U.S. at 608–11. In effect, Mr. Robles-Figueroa argued before the Wisconsin Court of Appeals and continues to assert that his trial attorney should have moved to suppress his early inconsistent statements because he had not received his *Miranda* warnings at the time he made them. Mr. Robles-Figueroa also argues that his post-conviction counsel should have raised this issue on appeal.

The Wisconsin Court of Appeals rejected Mr. Robles-Figueroa's arguments in this regard, finding that Mr. Robles-Figueroa could not establish a *Seibert* violation and, therefore, could not establish prejudice

---

[3] As the State points out, Mr. Robles-Figueroa uses the phrase "postconviction counsel" to describe the attorney who represented him in his first post-conviction motion following his second trial and the direct appeal following his second trial. (*See* Docket #16 at 28 n.6; Docket #13). The Court will use the same terminology.

resulting from trial counsel's failure to file a motion to suppress based upon *Seibert*. (Docket #1, Ex. 3 at 2–3).[4]

There is a very high standard applicable to Mr. Robles-Figueroa's ineffective assistance claims:

> On habeas review, a federal court determines whether the state court's application of the ineffective assistance standard was unreasonable, not whether defense counsel's performance fell below *Strickland v. Washington*, 466 U.S. 668 (1984), standards. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." (citation omitted) (internal quotation marks omitted)). The state court is granted "deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* To find a state court's application of Strickland unreasonable is a high bar requiring "clear error." *See Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). The unreasonable application of federal law will lie "well outside the boundaries of permissible differences of opinion" and will be a clearly established Supreme Court precedent unreasonably extended to an unsuitable context or the unreasonable refusal to extend that rule somewhere it should have applied. *Id.* at 602.

*Long v. Butler*, No. 13-3327, 2015 WL 6500128, at *8 (7th Cir. Oct. 27, 2015).

The Wisconsin Court of Appeals' decision was not unreasonable as to its holding that Mr. Robles-Figueroa's ineffectiveness of trial counsel claim failed. In effect, the Wisconsin Court of Appeals found that trial counsel's failure to file a *Seibert*-based motion to suppress could not have prejudiced

---

[4] The Wisconsin Court of Appeals' opinion also implies that Mr. Robles-Figueroa had defaulted this claim, as he was raising it in a successive post-conviction motion without more than conclusory allegations of ineffective assistance of post-conviction counsel. (*See* Docket #1, Ex. 3 at 1–2).

Mr. Robles-Figueroa. (*See* Docket #1, Ex. 3). That is because "Robles-Figueroa's motion d[id] not establish that he was in custody at the time he made the inconsistent statements. Therefore, the motion, on its face, [wa]s insufficient to establish a *Seibert* violation or ineffective assistance of counsel for failing to raise that issue." (Docket #1, Ex. 3 at 6). The Wisconsin Court of Appeals credited the trial court's ruling that Mr. Robles-Figueroa "could have terminated his discussion with the police officer any time he wanted to…the interview was nonthreatening, noncustodial and voluntary." (Docket #1, Ex. 3 at 6). Thus, because Mr. Robles-Figueroa was not in custody, *Seibert* would not have required a *Miranda* warning. *See, e.g.*, *Seibert*, 542 U.S. at 608–11; *United States v. Thompson*, 496 F.3d 807, 811 (7th Cir. 2007). That is a reasonable application of controlling federal law. Mr. Robles-Figueroa tries to undermine the Wisconsin Court of Appeals' conclusion by recounting the facts surrounding the questioning that led to his statements (*see, e.g.*, Docket #13 ¶¶ 56–57), but nothing in those facts establishes that the Wisconsin Court of Appeals' application of law or determination of the facts was unreasonable. In short, Mr. Robles-Figueroa's ineffective assistance of trial counsel claim fails.

Mr. Robles-Figueroa's ineffective assistance of post-conviction counsel claim also fails. To begin, he could not have been prejudiced by his post-conviction counsel's failure to raise the argument on direct appeal because the claim lacked merit, as described in the previous paragraph. Moreover, Mr. Robles-Figueroa has admitted facts that establish that his post-conviction counsel was not ineffective. (*See* Docket #13 ¶ 70). "Appellate counsel's performance is deficient under *Strickland* only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised."

*Makiel v. Butler*, 782 F.3d 882, 898 (citing *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010); *Lee v. Davis*, 328 F.3d 896, 900–01 (7th Cir. 2003)). In his opening brief, Mr. Robles-Figueroa admitted "that while not clearly stronger than the increased sentence issue raised by attorney Hart on appeal, the issue regarding the suppression of his statements to police was worthy of re-submission…." (Docket #13 ¶ 70). Because that suppression issue was not "clearly stronger" than the sentencing issue actually presented, post-conviction counsel could not have been ineffective. *See Makiel*, 782 F.3d at 898.

Accordingly, the Court is obliged to deny Mr. Robles-Figueroa's habeas petition to the extent that it alleges ineffective assistance claims stemming from the failure to file a suppression motion under *Seibert*.

4.    CONCLUSION

The Court having determined that each of Mr. Robles-Figueroa's claims fail, it is obliged to deny his petition for a writ of habeas corpus in full.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Mr. Robles-Figueroa must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). While Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should be issued, additional

arguments are not necessary here. As the Court discussed extensively, above, reasonable jurists would not debate whether the petition should have been resolved in a different manner. No reasonable jurist would find it debatable that Mr. Robles-Figueroa's petition fails to make any showing—let alone a substantial showing—of a violation of a constitutional right. As a consequence, the Court must deny a certificate of appealability as to Mr. Robles-Figueroa's petition.

Finally, the Court closes with some information about the actions that Mr. Robles-Figueroa may take if he wishes to challenge the Court's resolution of this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). It should also be noted that because this court denied a certification of appealability, Mr. Robles-Figueroa must seek one from the Seventh Circuit. Fed. R. App. P. 22(b). Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Accordingly,

IT IS ORDERED that the Mr. Robles-Figueroa's petition for a writ of *habeas corpus* (Docket #1) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that a certificate of appealability as to Mr. Robles-Figueroa's petition be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED with prejudice.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 10th day of December, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge